## Ohio & Kentucky Railway Company v. Whitt.

(Decided May 3, 1918.)

### Appeal from Morgan Circuit Court.

1. Railroads—Fires—Evidence.—Circumstantial evidence will suffice to sustain an allegation of negligence in the operation of trains, or in the equipment of smoke stacks with spark arresters, and a verdict, holding a railroad company liable for damages by fire alleged to have been started by sparks from a passing engine, will not be disturbed even though the plaintiff be unable to show by direct evidence that sparks were emitted from the engine if the circumstances be such as to warrant the conclusion that the fire originated in that way.

2. Railroads—Fires—Negligence.—If a railroad company negligently allows combustible material to accumulate and remain upon its right of way adjacent to the track, it will be liable for damage by fire to adjacent property where the fire originates in said combustible matter upon its right-of-way through sparks from its engine, and this though the engine be properly equipped with spark arresters properly adjusted and the train be prudently operated.

3.   Railroads—Fires—Negligence.—It is prima facie negligence for a railroad company to allow inflammable material to accumulate and be upon its right of way.

S. MONROE NICKEL and FINLEY E. FOGG for appellant.

A. FLOYD BYRD, EVERETT MATHIS and GEORGE TAULBEE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

On April 9, 1915, a stock barn and a large quantity of corn, hay, and farming implements, belonging to Boyd Whitt, were destroyed by a fire which, it is alleged in this action, started from cinders and coals of fire emitted from the smoke stack of the engine of appellant company. The barn stood almost three-fourths of a mile from the railroad but only a short distance from a forest which extended almost to the railroad. In two or three minutes after the passing of a passenger train on the morning before the day of the fire, two ladies saw fire start on the right-of-way of the company; there was no person about the fire nor had any one been observed in that vicinity for some time before the fire started. There is no reasonable hypothesis on which to account for the fire, except from the cinders which fell from the passing train. The fire started on top of a high cut. The top of the smoke stack was almost even with the top of the ground of the embankment on either side of the cut; there was a strong gale blowing, and the train had scarcely passed and was not out of hearing when the fire was first observed. There was also evidence tending to show that the railroad company had violated section 790, Kentucky Statutes, requiring railroad companies to keep their right-of-way clear and free from weeds, dry grass, decayed timber and other filth which from their nature and condition are combustible and likely to communicate fire from passing trains to abutting property. The two witnesses who first discovered the fire say that the combustible matter upon the right-of-way was sufficient to make a large flame and that the wind carried it rapidly into the leaves and timber on adjacent property in the direction of the barn which was destroyed the next day. A number of neighbors turned out to fight the fire and were doing their utmost to check it when a shower of rain came and apparently quenched the fire, but early next day the fire was again raging through the forest and the

neighbors again turned out to fight it. The wind was so strong that sparks were picked up and carried much in advance of the main ˙ conflagration. The appellee, Whitt, joined the fire fighters and was endeavoring to help save the property of some of his neighbors quite a distance from his home at the time he received news that. his barn was on fire. It appears that the fire had so scattered that it was burning in many directions and over a large area; the burnt area extended from its starting point at the railroad through the forest, even crossing small streams to within a short distance of the barn; at its nearest point to the barn the fire was on a steep precipice. some two hundred yards distant and much higher than the barn and the wind was blowing directly towards the barn; large sparks and embers were carried in that direction by the wind at the time the barn was first discovered on fire; there is no controversy as to the destruction of the barn and its contents, except as to their value. This action for damages is based upon the negligence of the company (1) in failing to have its engine equipped with spark arresters of the most modern and scientific type in practical. use, and upon the failure of the company to have the same properly adjusted; and (2) negligent operation of the train in causing unusual and unnecessary exhausts of steam, throwing cinders unnecessarily; (3) allowing combustible matter to accumulate on the right-of-way in violation of section 790, Kentucky Statutes. The only evidence of the nature, condition and adjustment of the spark arresters upon the engine of the train, which it is charged emitted the live sparks, is that given by the train inspector for the railroad company, who stated that he inspected the engine and spark arrester immediately before it started on the trip and immediately after it returned, and found the spark arrester in good condition and properly adjusted. The superintendent of the road also testified that the character of spark arrester in use upon the engine was the most modern and scientific in general use by railroad companies throughout the country. It was a passenger train of only two coaches which it is charged scattered the fire. There was a slight upgrade at the point where the fire first started. The train was going at the usual rate and it was not heavily loaded and did not give off any unusual exhaust, and no one testifies to seeing sparks emitted from the smoke stack. To prove

that the train started the fire, the plaintiff relied exclusively upon circumstantial evidence. It is claimed that the engine was the only instrumentality in the vicinity of the point where the fire started which carried fire, and immediately upon its passing the flame was first observed; that no fire or smoke was seen in that vicinity until the train passed. The railroad company insists that its right-of-way was not covered with filth or combustible matter, and especially that it was not so covered, at the point where the fire started. No one seems to have examined the right-of-way at this point before the fire, and after the fire, of course, all combustible matter either great or small was cleared away by the flames. But the two ladies who witnessed the starting of the fire say that the flames leaped high, which is evidence that a considerable amount of combustible material was upon the right-of-way at the point in question. One of these witnesses had noticed dry leaves and grass on the right-of-way at that point. In allowing filth to accumulate upon the right-of-way, the railroad company was negligent; it violated a statute, and while it would not ordinarily be liable for damage resulting from sparks emitted from its engine properly equipped with spark arresters and operated with reasonable care, it is liable for resulting damage to adjacent property arising from an otherwise harmless spark emitted from its smoke stack through a properly adjusted and sufficient spark arrester from a train under proper control if the spark fell upon inflammable filth and combustible matter negligently allowed to accumulate and be upon its right-of-way. Sparks or cinders ordinarily harmless where the right-of-way is kept in proper condition may become highly dangerous if the railroad company negligently allows combustible material to accumulate in close proximity to its track. This principle is recognized by many courts and by text-writers generally. Although a railroad company employ proper precaution in constructing, equipping with proper appliances, and in managing its engines, yet it is not releaved from liability in case fires are started on its right-of-way by an engine so equipped, communicating fire to adjoining property by reason of the negligence of the company in permitting combustible material to accumulate along its roadway. 33 Cyc. 1340.

Under our statutes, section 790, a railroad company is *prima facie* negligent to allow combustible or inflam-

mable material to accumulate on or remain upon its right-of-way, and is responsible for the damage flowing from such negligence although the spark which ignites the combustible material be no more dangerous than is ordinarily emitted by a prudently operated engine carrying the most scientific spark arresters in general use, properly adjusted.

In a long line of cases this court has held that evidence of the starting of other fires along the right-of-way in a similar way to the one in question, and not too remote in time, is competent evidence tending to show that the company did not employ the most reliable spark arresters in general use by railroads, or the arrester was out of order, or not properly adjusted, or if this be not true in whole or in part, then the engine was negligently operated. Several witnesses in this case testify to the starting of other fires along the right-of-way about the same time as the one in question, and at least one other fire was started upon the same day at no great distance from the one charged to have destroyed the barn. If large sparks of fire were emitted from the smoke stack, it would be evidence of the insufficiency or lack of adjustment of the spark arrester, or that the engine was not skillfully operated. In many reported cases it has been held that the evidence of railroad employes to the effect that the spark arresters had been examined and found to be in good condition and properly adjusted immediately before and immediately after the starting of the fire, is not conclusive, but that circumstances such as the scattering of large coals, or the starting of fires along the right-of-way may be received in evidence to contradict the direct testimony of the trainmen. Here the jury heard all the facts, and from the verdict, we conclude, found that the fires which originated along the right-of-way on the day of the one in question and on other days, prove that the spark arrester was either out of order, out of date, or out of position. If the arrester had been of correct type, in order and properly adjusted, so many fires would not have resulted. These facts were for the jury, and when taken altogether fully justified the conclusion reached. There is evidence in the record from which it may reasonably be concluded that the company was negligent in at least two respects, (1) in failing to have its engine properly equipped with a spark arrester in good condition and properly adjusted; and (2) in failing to keep

and maintain the right-of-way free from inflammable materials. While complaint is made of the ruling of the trial court in allowing the evidence of the accumulation of filth upon the right-of-way at distant points from where the fire originated, it is clearly shown by the evidence that at the point where the fire originated there were quantities of dry leaves, grass and other combustible material, and this being established it does not matter that the jury was permitted to hear evidence that at other points similar materials covered the right-of-way, and it was not prejudicial error although objectionable for the court to allow the evidence to go to the jury.

Perceiving no error to the prejudice of the appellant the judgment is affirmed.